Burg, Administratrix, Respondent, vs. Brown, Appellant.

*October 12—November 9, 1926.*

*Gifts: Of personal property: Evidence: Sufficiency.*

Statements by decedent to third persons that he had made a gift of certain bonds to defendant for services rendered in his household for a number of years, and his act in transferring such bonds from his own lock-box to that of defendant in an envelope on which he wrote that they were the "Property of" defendant, are *held* sufficient to establish a gift of the bonds to defendant.

Appeal from a judgment of the circuit court for Milwaukee county: Charles L. Aarons, Circuit Judge. *Reversed, with directions.*

This is an appeal from a judgment in favor of the plaintiff and against the defendant. Action was brought by the administratrix of the estate of E. J. Kelley, deceased, to recover certain bonds and securities claimed to be the property of said Kelley at the time of his death. In defendant's answer she claims to be the owner of the property, and on the trial it appeared that she claimed to be such owner by reason of gift by said Kelley to her during Kelley's lifetime. The case was tried before a jury, and the jury found

that at the time of his death E. J. Kelley was the owner of the bonds in question. Judgment was entered accordingly, from which the defendant appeals.

*Charles H. Gorman* of Milwaukee, for the appellant.

For the respondent there was a brief by *Anderson, Donovan & Steinle* of Milwaukee, and oral argument by *Orlaf A. Anderson.*

CROWNHART, J. E. J. Kelley was a physician and lived in the city of Milwaukee during the times referred to herein. He had his office in his residence. He had been married, but was divorced in the year 1905. From 1902 the defendant, *Anna Brown,* worked at his residence as a maid and practical nurse, and after he separated from his wife she continued to look after the home of the deceased and render service as a maid and practical nurse, more or less continuously until the time of Dr. Kelley's death. There is no question but that *Anna Brown* rendered faithful, competent, and valuable service to Dr. Kelley. A short time prior to his death, when the doctor was ailing, she took care of him personally and of his home. All the time after Dr. Kelley's divorce *Miss Brown* made her home with Dr. Kelley and was considered by the doctor as a member of his family, although she was doing outside work much of the time.

On March 27, 1918, Dr. Kelley procured a lock-box in the Second Ward Savings Bank, being box 690. This box was taken out in the name of Dr. Kelley and *Anna Brown,* and was used jointly by the two until August 25, 1923, when Dr. Kelley secured a lock-box in the same bank, number 1210, in the name of *Anna Brown.* Securities were put into the box on September 5, 1923, among others an envelope containing all the bonds in question except one, upon which was written in the handwriting of Dr. Kelley, "Property of *Miss Anna Brown.*" *Anna Brown* had the sole and exclusive right of entry to box 1210 from Sep-

tember 5, 1923, to September 12, 1923, when she gave Dr. Kelley written permission to enter same, and on that day the doctor entered both boxes alone. On October 3, 1923, both Dr. Kelley and *Miss Brown* entered both boxes, and thereafter all the bonds in issue were in box 1210. Dr. Kelley did not again enter either box, and *Anna Brown* had the exclusive possession of the keys to both boxes. On August 25, 1923, Dr. Kelley executed a bill of sale of his automobile to *Anna Brown,* and mailed it to her at Oconomowoc, where she then was. In February, two or three weeks before his death, Dr. Kelley requested a Miss Hirsch to telephone for *Miss Brown* to come to attend him, which she did, and *Miss Brown* came and nursed the doctor until he died.

Dr. Kelley died intestate on March 9, 1924. Prior to his death he had been able to be around continuously, and on the day of his death he was up, fully dressed, and reclining on a couch. On the trial a witness testified that she had been on friendly terms with Dr. Kelley for thirty-five years, and shortly after his divorce Dr. Kelley told her that he would leave everything to *Miss Brown* if anything happened to him; that he continuously made statements to the same effect whenever she met him; that on October 15, 1923, Dr. Kelley told the witness that he had given *Miss Brown* bonds to pay off what she had done for him, as he had always intended to do. He said the amount was nearly $6,000. In January, 1924, Dr. Kelley told the witness that he had given the appellant his car. Another witness testified that he had known Dr. Kelley for thirty years, and that Dr. Kelley had taken care of him professionally until the latter part of 1923, and had cared for his wife and children. Several times he had had conversations with Dr. Kelley relative to *Anna Brown.* He remembered a conversation that he had had with Dr. Kelley the latter part of October, 1923, wherein the doctor said that he had

taken care of *Miss Brown* as best he could, and that he had given *Miss Brown* bonds to the extent of approximately $6,000·; also that he had given her a bill of sale of his car. The bonds. in controversy were of the face value of $5,600. At the time of Dr. Kelley's death the bonds were·in the lock-box of *Anna Brown,* and were taken by her that day or the next day to her attorney and left in his custody.

Dr. Kelley left one sister and two brothers surviving him, who were his heirs.   He left no property of substantial value aside from the bonds in question.   The relations between Dr. Kelley and his brothers and sister were not close or intimate during the later years of his life, but there is nothing to show that they were not cordial or that there had been any difficulty between them.

It is the contention of the defendant that the great preponderance of the evidence shows that the bonds in question were owned by *Anna Brown.*   It is claimed that they were found in her possession; that defendant's relation to Dr. Kelley was such that he was in duty bound to provide for her because of the services which she had rendered him over a term of years; that he realized this obligation on his part, and that he made a gift and delivery of the bonds to *Anna Brown* before his death, and that this gift was evidenced by the admission of Dr. Kelley in writing, and in statements to third parties of such gift; that there is no evidence that Dr. Kelley had possession of or owned the . bonds after September 5, 1923.

There is much to be said in favor of the defendant's claim.   There is no question about her·services to Dr. Kelley.   Such services were valuable, and there seems to have been a very great reliance by Dr. Kelley upon *Miss Brown.* It was to her that he turned in his last illness.   Their personal relations and their relations with reference to property were intimate, both using the same lock-box, where *Miss Brown* kept bonds that she had purchased from time

to time, but there is no suggestion that their relation was meretricious.   Evidently sensing his approaching dissolution, Dr. Kelley, on August 25, 1923, conveyed his automobile by bill of sale to *Anna Brown,* and he procured a lock-box in the name of *Anna Brown.*   Thereafter, on September 5, 1923, it is apparent that he transferred his bonds from his own lock-box to that of *Anna Brown,* in an envelope on which he wrote, in his own handwriting, "Property of *Miss Anna Brown."*   This would seem to be conclusive evidence of his intent to transfer his property by gift or otherwise to *Anna Brown.   Anna Brown* was precluded by statute from giving any testimony as to the transaction, but the evidence and the inferences to be drawn from the facts are very strong, showing that the doctor did actually transfer the bonds in issue by gift on September 5, 1923, to *Anna Brown.*   There is no evidence to the contrary, and no facts from which a reasonable inference may be drawn to the contrary.   There is but little dispute in the evidence.   The witnesses seem to have been fair and truthful.   The issue is largely one of law rather than of fact.

It is the judgment of this court that the verdict of the jury was unwarranted from the evidence, and that the bonds in issue are the property of the appellant by virtue of gift from Dr. Kelley.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment in accordance with this opinion.